In the United States District Court
for the Southern District of Texas
Houston Division

| | |
|---|---|
| Adael Gonzalez Garcia,　　　　*Plaintiff,* | Civil Action No. 4:23-cv-542 (Jury Trial) |
| *versus* | |
| Harris County, Texas,　　　　*Defendant.* | |

Plaintiff's Response to Harris County's Motion to Dismiss

To the Honorable Christina A. Bryan:

Now comes Plaintiff Adael Gonzalez Garcia, responding to Defendant Harris County's motion to dismiss[1] pursuant to the Court's Order granting Plaintiff's motion to amend.[2] He respectfully shows the Court as follows:

## Standard of Review

A court may only dismiss a complaint as a matter of law where the plaintiff fails to state a claim upon which relief may be granted.[3] A complaint must survive when it contains "sufficient factual matter, accepted

---

[1] Doc. 64.

[2] Doc. 67.

[3] Fed R. Civ. P. 12(b)(6).

as true, to 'state a claim to relief that is plausible on its face.'"[4] The Court must accept the plaintiff's well-pled facts as true, and view them in the light most favorable to the plaintiff, making reasonable inferences and resolving contested facts and factual ambiguities in the plaintiff's favor.[5] Plausibility under this standard is unrelated to probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully."[6] The inquiry is generally limited to the contents of the pleading and its attachments.[7] Read in combination with Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary," as the pleadings need only provide "fair notice of what the . . . claim is and the grounds upon which it rests."[8]

Put differently, "[a] claim may *not* be dismissed unless it appears *certain* that the plaintiff cannot prove *any* set of facts that would entitle [them] to legal relief."[9] As a result, motions to dismiss are "viewed with disfavor" and "rarely granted" in this Circuit.[10] Indeed, the Supreme

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

[5] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citations omitted).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *Brand Coupon Network LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

[8] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (internal citations omitted).

[9] *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (internal citation omitted) (emphasis added).

[10] *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal quotations and citations omitted).

Court has reiterated time and again that § 1983 cases are not subject to any kind of heightened pleading standard, as long as the facts alleged make a constitutional claim.[11]

### Argument

Plaintiff has largely responded to the substance of Defendant's current motion to dismiss in a few places: his response to Defendant's previous motion to dismiss, his motion to amend, his reply in support of his motion to amend, and, to a lesser extent, in the February 10th hearing.[12] However, for clarity, convenience, and completeness, he provides the present response.

When Plaintiff moved the Court to reconsider dismissal and allow amendment to the second amended complaint, the Court considered Plaintiff's the second amended complaint, the County's argument against its sufficiency, noted that it need not grant leave to amend when amendment would be futile, and granted Plaintiff's motion — thereby necessarily finding it sufficient.[13] By granting Plaintiff's second motion to amend, the same logic applies to the live (third amended) complaint.[14] Moreover, the live complaint contains all the same substance

---

[11] *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (citations omitted).

[12] Docs. 57, 58, 62, Minute Entry 02/10/2025; *see also* Docs. 19, 41, 44, 45, 47 (other documents containing substantive arguments supporting the plausibility of Plaintiff's claims).

[13] Doc. 47.

[14] Doc. 67.

as the second amended complaint, but adds some detail about strikes to Plaintiff's head, as well as alleged facts supporting a pattern of head strike problems in the Harris County Jail.[15] These added allegations by themselves would not invalidate the remainder of the complaint.

Plaintiff would also note that the Court already expressly considered and rejected Defendant's false contention that the documentary referenced in the live complaint contains footage from videos subject to the protective order — it does not.[16] Thus, that argument will not be further addressed here.

All that said, Plaintiff will begin by summarizing Defendant's main arguments and Plaintiff's direct responses thereto, then demonstrate that the live complaint clearly states plausible claims against Harris County.

1. **Summary of Defendant's arguments and Plaintiff's direct responses.**

The County opens by arguing that the live complaint is "virtually unchanged from *First* Amended Complaint," and that Plaintiff did not address the issues raised by the Court's order originally dismissing the case.[17] That argument is patently ludicrous: in no world could Plaintiff's 123-page live complaint, providing detailed facts and examples

---

[15] *See* Doc. 68 ¶¶ 8, 30–37.

[16] Doc. 67.

[17] Doc. 64 ¶¶ 1–8 (emphasis added).

regarding the County's policies, patterns, and practices — along with their effects — be considered "the same complaint" as his 17-page first amended complaint.[18] Moreover, again, the Court *already* considered Plaintiff's second amended complaint, the County's argument against its sufficiency, noted that it need not grant leave to amend when amendment would be futile, and granted Plaintiff's motion — thereby necessarily finding it sufficient.[19]

Defendant also attacks the allegation that "falling off a bunk" is often used as an excuse by guards to cover injuries caused by excessive uses of force.[20] Notably, it voluntarily references the IAD videos in doing so. However, irrespective of Plaintiff's alleged fall off of a bunk, Plaintiff alleges that such a fall did not cause the injuries leading to his coma, hospitalization, and injuries, but that he was subject to excessive uses of force (namely strikes to his head) that caused those injuries, and the alleged fall from the bunk was used as an excuse to obfuscate the fact that his injuries were caused by those uses of force.[21]

Next, the County argues that newspaper articles are not summary judgment evidence.[22] Not only is that entirely irrelevant — it's the

---

[18] *Compare* Doc. 12 *with* Doc. 68.

[19] Doc. 47.

[20] Doc. 64 ¶ 5; Doc. 68 ¶ 7.

[21] Doc. 68 ¶¶ 7–8.

[22] Doc. 64 ¶ 11.

motion to dismiss stage, and there are no "newspaper articles" at issue — it also fails entirely to address the fact that the investigative report it is trying to attack is evidenced primarily by *the County's own records and policies*, which Plaintiff would ask for and receive in discovery anyway.[23] By making that argument, it highlights the fact that discovery is needed in this case, and that Plaintiff will likely receive a large swath of information (to the tune of at least 810 incidences of head strikes)[24] that *is* admissible at summary judgment and at trial. Moreover, the video contains direct footage of similar incidents and statements of the County's policymaker (Sheriff Gonzalez) and agents (former employees) themselves against its interest.

The County then attacks references to other lawsuits and statements by politicians as incompetent summary judgment evidence.[25] Again, this is not summary judgment, so the argument is entirely irrelevant. But beyond that, the referenced information is: (a) illustrative of the wider pattern and practice at issue in the lawsuit, as well as illustrative of the County's knowledge of that pattern and practice; and (b) is supported by other allegations, including independent reports by other agencies.[26]

---

[23] *See* https://www.youtube.com/watch?v=t4viAQcAp8k&t=2s.

[24] *See* https://www.youtube.com/watch?v=t4viAQcAp8k&t=2s; *see also* Doc. 68 ¶ 33.

[25] Doc. 64 ¶¶ 12–17

[26] *See generally* Doc. 68 § III.B.

Finally, the County argues that Plaintiff's pleadings fail to state a claim.[27] That argument is addressed by the following section, establishing the plausibility of Plaintiff's claims. But it is worth noting that Defendant largely ignores huge swaths of Plaintiff's allegations detailing the documented and known problems in the Harris County Jail related to its chronic understaffing and underfunding, as well as the resulting culture of violence.[28]

2. **Plaintiff's third amended complaint clearly states plausible <u>Monell</u> claims against Harris County.**

As the Court is aware, Plaintiff seeks to hold Harris County liable under *Monell*. With respect to the *Monell* standard, the Fifth Circuit recently clarified that:

> [o]ur caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "perform the specific act that forms the basis of the § 1983 claim."[29]

---

[27] Doc. 64 § I.F.

[28] *See, e.g.,* Doc. 64 ¶ 25 (citing only as far as ¶ 28 in the live complaint out of 615 numbered paragraphs).

[29] *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (citations omitted).

A municipality may also be liable where its "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."[30] Failure to train establishes liability where a municipality "disregard[s] a known or obvious consequence of [its] action" such that it is deliberately indifferent to the rights of those with whom the untrained employees interact.[31]

Further, to the extent that liability here stems from the County's failure to adopt certain training and policies in several areas, the absence of or failure to adopt an appropriate policy can be considered a policy in the same way that an affirmative policy is, especially when the County was aware of the need for a policy.[32] Notably, the Seventh Circuit in *Glisson* looked at Indiana Department of Corrections' guidelines as evidence that a jail medical provider had the knowledge of the need for a policy but chose not to act.[33] It went on to note that "There is no magic number of injuries that must occur before its failure to act can be considered deliberately indifferent."[34] More strikingly in the context

---

[30] *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

[31] *Id.* (internal quotations, citations, and alterations omitted).

[32] *J.K.J. v. Polk County*, 960 F.3d 367, 370, 375–76, 384 (7th Cir. 2020) (en banc) (internal citations omitted); *Glisson v. Indiana Department of Corrections*, 849 F.3d 372, 378–80, 382 (7th Cir. 2017) (internal citations omitted).

[33] *Glisson*, 849 F.3d at 380.

[34] *See Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 929 (7th Cir. 2004) ("CMS does not get a 'one free suicide' pass."); *Glisson*, 849 F.3d at 382.

of the case at bar, the *en banc* Seventh Circuit in *J.K.J.* looked at the risk of sexual assault in a county jail, despite policies against such conduct, and determined that because it took no action with respect to detection, prevention, *or training*, that a jury was reasonable in holding the county liable under *Monell*.[35]

Further, the facts also support municipal liability on the related, but independent basis of ratification.[36] Relevant Supreme Court precedent "holds that post hoc ratification by a final policymaker is sufficient to subject a city to liability because decisions by final policymakers are policy."[37] This Court's lengthy discussion of the nuances of the ratification theory in *Hobart* is extremely worthwhile, but will not wholly be reproduced here although some discussion is warranted.[38] Notably, the cited cases came out after *Grandstaff v. Borger* (1985) and *Coon v. Ledbetter* (1986), so any argument that *Grandstaff* or its progeny changes that analysis is understandable, but flawed.[39] In relevant part, while the Court noted that there is no "principled basis for limited the ratification theory to so-called 'extreme factual scenarios'" (and Plaintiff agrees), the Fifth Circuit nonetheless has consistently held that

---

[35] *J.K.J.*, 960 F.3d at 370, 384.

[36] *See Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 793 (S.D. Tex. 2013).

[37] *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)).

[38] *See id.* at 793–98.

[39] *Id.* at 794.

ratification only applies to such circumstances.[40] The Court further notes that "[l]imited guidance exists as to the definition of a sufficiently extreme factual scenario," and quotes one of the main cases on the issue that provides "'for instance, an obvious violation of clearly established law'" as an example of "'sufficiently extreme conduct.'"[41]

The Court originally dismissed Plaintiff's case in large part because his previous complaint did not sufficiently allege a pattern or practice that could be tied to his injuries in order to create liability against the County, and noted that he did not allege a specific written policy.[42] The live complaint addressed that issue by providing recently compiled information about the ongoing problems within the Harris County jail, about which its policymakers were expressly and admittedly knowledgeable.[43] The facts allege not only a patterns and practices of excessive force, rampant violence, inadequate medical care, and other issues, they also demonstrate that the County was *specifically aware* of such issues, but failed to take action in the form of training or policy, and the County's intentional inaction can itself be considered a policy.[44] Moreover, these issues were brought to the Commissioners Court, where the

---

[40] *Id.* at 796.

[41] *Id.* at 795–96 (quoting *World Wide St. Preachers v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)).

[42] *See generally* Doc. 39.

[43] *See generally* Doc. 68 ¶¶ 30–598.

[44] *See generally* Doc. 68 ¶¶ 30–598.

County was asked for more funding and staff, but the County refused to provide those necessary resources, which can and should be construed as a policy to continue operating the jail in the same unconstitutional manner.

With respect to Plaintiff's ratification claim, he pleads on information and belief that this incident was reviewed by a policymaker,[45] and that the policymakers had specific knowledge of the rampant excessive force, cover-ups, and other issues at play here.

Moreover, the County's motion to dismiss was denied in *Wagner v. Harris County*, SDTX No. 4:23-cv-2886, in which this Court considered very similar issues.[46] In relevant part, it held that:

> Plaintiffs offer the following to support the existence of a set of municipal policies: (1) descriptions of the 27 incidents at issue in this suit, which bear varying degrees of similarity to each other; (2) details of of 36 prior incidents at the Jail involving detainees who are not parties to the present action; (3) a 2009 DOJ report detailing deficiencies at the Jail; (4) 13 TCJS reports noting the Jail's non-compliance with minimum jail standards; (5) statements from Sheriff Gonzales and prior Jail employees about the systemic issues in the Jail; and (6) statistics to show the prevalence of violence at the Jail. The Court finds that this evidence of similar incidents is sufficient

---

[45] Doc. 68 ¶ 610.

[46] Doc. 45-1.

to plead the existence of the policies or customs Plaintiffs allege.[47]

It went on to deny the County's motion to dismiss because

"[d]espite Defendant's entreaties, the Court cannot ignore what Plaintiffs allegations clearly assert: the Jail has a policy or custom of permitting excessive force against detainees, failing to provide medical care, promoting violence amongst detainees, failing to monitor detainees, and understaffing and overcrowding the Jail. Defendant's Motion to Dismiss is DENIED with respect to Plaintiffs conditions-of-confinement claims.[48]

As the Court can see from the live complaint,[49] Plaintiff alleges the same pattern and practice based on the same publicly available evidence as the *Wagner* plaintiffs.[50] In fact, the *Wagner* plaintiffs cited to the actions involved in *this* case in order to help them establish the pattern of excessive force, overcrowding, understaffing, and underfunding that Plaintiff alleges.[51]

Beyond the higher-level allegations of the County's deliberate policy of underfunding, understaffing, and tolerance of violence, the live

---

[47] Doc. 45-1 p. 20.

[48] Doc. 45-1 p. 28.

[49] Doc. 68.

[50] *Compare* Doc. 48, *with* Doc. 45-2 (*Wagner* complaint).

[51] Doc. 45-2 pp. 114–16.

complaint also alleges a specific problem with strikes to inmates' heads.[52] Specifically, he alleges that

> Over the last 4 years, there have been at least 810 instances of strikes to inmates' heads, but only 10 officers have received discipline by the HCSO, and some that had been indicted on criminal charges were never disciplined. Use of force records indicate that those minimum 810 instances of head strikes are part of a pattern in the Harris County Jail wherein head strikes were used quickly and under questionable circumstances, often combined with no attempts at de-escalation whatsoever. In many cases, the jailers were the aggressors, seeking out opportunities to use force. A former jailer at the Harris County Jail also described a "culture" of excessive force and head strikes, wherein jailers use the inmates as "punching bags" to deal with the stress of the job and/or personal issues. He describes that they are "proud" of the force they use, and claim bragging rights based on the number of times a jailer had used force.[53]

He also alleged that it took until January of *this year* for the County to address this issue at all, likely stemming from the investigative report and lawsuits like this one and *Wagner*.[54]

Clearly, a Plaintiff complaining of several instances of strikes to his head can point to 810 instances of head strikes in four years as sufficient to allege a custom or policy at the pleading stage.

---

[52] Doc. 68 ¶¶ 30–37.

[53] Doc. 68 ¶¶ 32–34 (paragraph numbering omitted)

[54] Doc. 68 ¶ 37.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss.

Respectfully submitted,

*/s/Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
    Bar No. 24123583
U.S. Southern District of Texas
    Federal ID No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
Fax: 713.893.6737
Email: alex@acj.legal
**Attorney for Plaintiff**

*/s/Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
    Bar No. 00790995
U.S. Southern District of Texas
    Federal ID No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
Email: AttorneyKallinen@aol.com
**Attorney for Plaintiff**

## Certificate of Service

I certify that on March 20th, 2025, I have served a true and correct copy of the foregoing document that was delivered by the ECF in accordance with the Federal Rules of Civil Procedure to all ECF notice attorneys of record.

*/s/Alexander C. Johnson*
Alexander C. Johnson
