United States District Court
Southern District of Texas
**ENTERED**
July 22, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ADAEL GONZALEZ GARCIA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-CV-0542 |
| | § | |
| HARRIS COUNTY TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Harris County's Motion to Dismiss Third Amended Complaint.[1]  ECF 64.  Having considered the parties' submissions and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.[2]

## I.    Background

### A. Factual Background

Plaintiff Adael Gonzalez Garcia's Third Amended Complaint asserts a claim against Defendant Harris County, Texas under 42 U.S.C. § 1983 for his assault by

---

[1] Defendant's Motion is mistitled as Defendant Harris County's Motion to Dismiss Second Amended Complaint but, as explained below, it is directed to the Third Amended Complaint. *See* ECF 64 at 6 (stating "This [Motion] is in response to DE 58-1").

[2] The parties consented to proceed before the Undersigned Magistrate Judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  ECF 17; ECF 38.

guards at the Harris County Jail in November 2022. ECF 68. Plaintiff alleges that on or about November 24, 2022, while at the Harris County Jail, Plaintiff fell from his bunk and was taken to the jail clinic for examination.[3] *Id.* ¶7. However, Plaintiff alleges that the severe injuries he suffered did not result from his fall, but from three separate assaults by jail guards between November 24-26, 2022. *Id.* ¶¶7-8. The assaults "caused severe injury to [Plaintiff's] head, neck, eye, and other areas," and required him to be rushed to the hospital in a coma where he underwent brain surgery.[4] *Id.* ¶¶8-10. According to Plaintiff, thousands of assaults and multiple deaths have occurred at the Harris County Jail, allegedly due to, among other things, understaffing, overcrowding, lack of training, a culture of violence, and a policy of failing to investigate incidents and discipline aggressors. *See generally id.* ¶¶ 14-610.

### B. Procedural Background

Plaintiff initiated this suit against Defendant on February 14, 2023. ECF 1. After Defendant filed a Motion to Dismiss, Plaintiff filed a First Amended Original Complaint on May 23, 2023, which was followed by Defendant's second Motion to

---

[3] Plaintiff alleges that "[f]alling off of a bunk" is a common excuse guards use to cover up excessive force. *Id.* ¶ 7. Defendant represents that "falling off a bunk" is not an excuse and video confirms that Plaintiff fell off his bunk. ECF 64 at 7. To the extent there is any dispute as to whether Plaintiff fell off his bunk, it is irrelevant for current purposes.

[4] Plaintiff's Third Amended Complaint continues to allege that no guard was charged with a crime, no guard has been disciplined, and that the jail has refused to release the video of the incident or the names of the guards involved. *Id.* ¶¶ 9, 13, 16. These allegations are not accurate at this time as 3 guards were indicted for the assault and the video has been produced. ECF 44-1, 44-2, 44-3.

Dismiss.  ECF 12; ECF 13.  On March 26, 2024, the court issued a Memorandum Opinion and Order granting Defendant's second Motion to Dismiss and entered Final Judgment.  ECF 39; ECF 40.  On Plaintiff's motion, the Court vacated the March 26, 2024 Order and granted Plaintiff leave to file a Second Amended Complaint.  ECF 47.  Plaintiff filed his Second Amended Complaint on November 14, 2024, Defendant filed a third Motion to Dismiss, and Plaintiff filed another Motion to Amend, attaching a proposed Third Amended Complaint.  ECF 48; ECF 53; ECF 58.  Before the Court could rule on the third Motion to Dismiss or the Motion to Amend, Defendant filed its fourth Motion to Dismiss.  ECF 64.  The Court terminated the third Motion to Dismiss and granted Plaintiff leave to file the Third Amended Complaint.  ECF 67.  The Third Amended Complaint, originally attached to the Motion to Amend as ECF 58-1, was docketed on February 28, 2025.  ECF 68.

Defendant moves to dismiss Plaintiff's Third Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF 64.  The Motion has been fully briefed and is ripe for determination.  ECF 64; ECF 69; ECF 70.

## II.    Rule 12(b)(6) Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 48 F.3d 68, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, the court does not apply the presumption of truth to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion. If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment. *See* FED. R. CIV. PRO. 12(d). However, the court may take judicial notice of public documents and may also consider documents a defendant attaches to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and central to the plaintiffs' claims. *See Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011).

Defendant objects that the Third Amended Complaint improperly imbeds a link to the confidential jail video and improperly cites news articles, videos,

allegations from other lawsuits, and unsworn statements from politicians that are hearsay and not factual. ECF 64 at 6-11. As confirmed in a hearing before the Court on February 10, 2025, Plaintiff did not imbed a link to the confidential jail video of the incident in the Third Amended Complaint and therefore that objection is overruled.

The Court will not rule on Defendant's other evidentiary objections in the context of this Motion to Dismiss, which addresses only the sufficiency of Plaintiff's allegations. However, before continuing to its analysis, the Court recognizes and shares Defendant's frustration with the fire-hose approach to pleading exhibited in this case. For instance, the allegations in the Third Amended Complaint regarding comments made by Sheriff Gonzalez during an October 2016 campaign debate do not suffice as plausible allegations of any element of Plaintiff's § 1983 claim. *See, e.g.,* ECF 68 ¶¶ 70-79, 210. Sheriff Gonzalez was a political candidate in October 2016 and was not the Sheriff or a policy maker for Harris County at that time. Further, according to the Plaintiff, the debate questions generally concerned inmate deaths, mentally ill inmates, overcrowding, and staffing issues, issues which are not involved in this case. *Id.* In addition, the Third Amended Complaint repeatedly cites a 2009 DOJ Report regarding jail conditions, including the use of excessive force at the jail. *See e.g., id.* ¶¶ 58-63. However, beyond general allegations that the 2009 Report exists and was critical of jail culture, the Third Amended Complaint does not

5

plausibly allege that a policy recognized in the 2009 Report was in effect in 2022 and caused Plaintiff's injuries at the hands of guards, who were indicted for their crime. These are just two examples of the various, generic allegations that add volume but not substance to Plaintiff's 123-page Third Amended Complaint.

## III.    Analysis

Defendant argues that its Motion to Dismiss under Rule 12(b)(6) for failure to state a claim under 42 U.S.C. § 1983 should be granted because Plaintiff's Third Amended Complaint fails to meet the requirements for municipal liability set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See* ECF 64. In Response, Plaintiff states he "has largely responded to the substance of Defendant's current motion to dismiss" in prior briefing but "for clarity, convenience, and completeness, he provides the present response." ECF 69 at 3.

Given the procedural history of this case, the Court firmly rejects Plaintiff's argument that by granting Plaintiff leave to file a Third Amended Complaint the Court has "necessarily [found] it sufficient. ECF 69 at 3, 5. Plaintiff's Third Amended Complaint must stand on its own, and the Court's rulings on the Motion to Dismiss are based on the current briefing and law. Plaintiff's substantive arguments in opposition the Motion to Dismiss are: (1) he has adequately pleaded that Harris County has official policies that led to his injuries; (2) Harris County ratified the conduct that led to his injuries; and (3) the Court should follow the lead

of U.S. District Judge Keith Ellison in *Wagner v. Harris Cnty.*, No. 4:23-CV-02886, 2024 WL 2836332 (S.D. Tex. June 4, 2024) and find Plaintiff's allegations sufficient to overcome Harris County's Motion to Dismiss under *Monell*.[5]

The Court finds that Plaintiff has failed to plead a plausible claim against Harris County under the standards of *Monell* except as to one narrow claim. The Court first addresses the claims that are dismissed.

> ### A.  Plaintiff cannot state § 1983 claim for violation of his First, Fourth and Fifth Amendment rights.

Despite the clear basis for the Court's prior dismissal, Plaintiff's Third Amended Complaint continues to allege Harris County's liability under § 1983 for violation of his constitutional rights under the First, Fourth, and Fifth Amendments. ECF 39; ECF 68 ¶¶ 603, 611.  Like Plaintiff's prior Complaints, the Third Amended Complaint contains only a passing reference to the First Amendment.  ECF 68 ¶ 611. The Third Amended Complaint contains no factual allegations that implicate the First Amendment in any way.

The Fourth Amendment does not create a constitutional basis for excessive force claims by pre-trial detainees—individuals who, well after arrest, are being held in custody while awaiting trial.  *Valencia v. Wiggins*, 981 F.2d 1440, 1444 (5th Cir. 1993) (holding that where the incidents of arrest have long since been completed and

---

[5] The Court has considered all of the parties' arguments in connection with the instant Motion to Dismiss whether expressly addressed in this Memorandum or not.

the individual is held in pre-trial detention, the Due Process Clause, not the Fourth

Amendment, provides the appropriate constitutional basis for determining whether

force used against the pretrial detainee was excessive).

The Fifth Amendment only applies to violations of Constitutional rights by

the United States or a federal actor. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th

Cir. 2000) ("The Fifth Amendment applies only to violations of constitutional rights

by the United States or a federal actor."). For these reasons, Plaintiff's claims for

violation of his rights under the First, Fourth, and Fifth Amendment are DISMISSED

WITH PREJUDICE.

### B.    Plaintiff fails to state a § 1983 claim based on ratification.

The Court also previously dismissed Plaintiff's claim that Harris County

ratified the wrongful conduct of the guards. ECF 39 at 17-20. Plaintiff's Third

Amended Complaint adds no new allegations regarding ratification and, like

Plaintiff's prior Complaints, does not mention "ratification." *See* ECF 68. In his

Response to the Motion to Dismiss, Plaintiff again argues Harris County's liability

on a theory of ratification. ECF 69 at 9.

Ratification is a theory by which some courts have held a municipality liable

for a subordinate's constitutional violation if "authorized policymakers approve a

subordinate's decision and the basis for it." *Hobart v. City of Stafford*, 916 F. Supp.

2d 783, 792-93 (S.D. Tex. 2013) (explaining the theory of ratification); *Oliveria*,

2023 WL 7222124, at *8 (explaining theory of ratification and finding plaintiff's allegations insufficient to state a *Monell* claim based on ratification).  In other words, ratification of an employee's acts by the municipality's official policymaker creates an official policy approving the subject acts.  *Hobart*, 916 F. Supp. 2d at 792-93. Plaintiff argues that the theory of ratification has been expanded by the Fifth Circuit and no longer is limited to "extreme scenarios."  ECF 60 at 9-10.

Plaintiff's argument regarding the on-going viability of a ratification liability theory has no bearing on the issue before the Court. The Third Amended Complaint fails to allege any facts to show that Sheriff Gonzalez, or any other policymaker, knowingly approved the guards' assault on Plaintiff.  To the contrary, the guards involved were criminally prosecuted for their conduct.  Plaintiff's ratification claim is DISMISSED WITH PREJUDICE.

**C.    Plaintiff's Third Amended Complaint, except as set forth in Section III.D below, fails to state a § 1983 claim for violation of Plaintiff's Fourteenth Amendment Rights.**

**1.    *Monell* sets forth the requirements for imposing liability on a municipal government for the acts of its employees.**

It is well-established that a municipality, like Harris County, cannot be held vicariously liable under § 1983 for the conduct of its employees.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017) ("Harris County, as a municipality, may not be held liable under § 1983 on a basis of vicarious liability.").  A municipality can be held liable

under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Therefore, to state a claim under § 1983 against Harris County, Plaintiff must plausibly allege (1) an official policy, (2) promulgated by the municipal policymaker,[6] (3) which was the moving force behind the violation of his constitutional rights. *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 130 (5th Cir. 2022); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Further, the official policy or custom underlying Plaintiff's § 1983 claim must itself be unconstitutional or must have been adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). Deliberate indifference is a "stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *McWilliams v. City of Houston*, No. 21-20369, 2022 WL 17337820, at *4 (5th Cir. Nov. 30, 2022) (quoting *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 410-11 (1997)). Thus, allegations of a "generalized risk" that a constitutional violation could result from the municipal actor's conduct is not sufficient to survive a motion to dismiss. *Gibson v. City of Houston*, No. 4:22-CV-

---

[6] For current purposes, Harris County does not dispute Plaintiff's allegation that Sheriff Ed Gonzalez is the municipal policymaker for the Harris County Jail.

909, 2023 WL 2652258, at *3 (S.D. Tex. Mar. 27, 2023) (granting defendants' Rule 12(b)(6) motion in part because plaintiff did not plead failure to supervise rose to the level of deliberate indifference); *McWilliams*, 2022 WL 17337820, at *4 (affirming dismissal of claims because allegation that officers failed to recognize the need for medical care did not sufficiently allege deliberate indifference).

The Fifth Circuit has recognized three ways a Plaintiff may establish the existence of an official policy for the purpose of *Monell*:  i) by showing a written policy; ii) by showing a widespread municipal practice; or, iii) in rare circumstances, by showing a single decision of an official policymaker if that policymaker also performed the act that forms the basis of the § 1983 claim.  *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019); *Zavala v. Harris Cnty., Texas*, No. 22-20611, 2023 WL 8058711, at *2 (5th Cir. Nov. 21, 2023).

To rise to the level of an official policy, a widespread practice "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Zavala*, 2023 WL 8058711, at *2; *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 396 (5th Cir. 2017) (citation omitted). In addition, to satisfy *Monell*, a pattern and practice requires "similarity, specificity, and sufficiently numerous prior incidents." *Id.*; *see also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (holding that twenty-seven

complaints filed between 2002 and 2005 did not establish a pattern of excessive force).

A claim for failure to train or supervise municipal employees is a particular type of *Monell* claim. To survive a motion to dismiss a failure to train or supervise claim, a plaintiff must plead "that (1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference." *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (citation omitted). In addition, pleading deliberate indifference in a failure to train case requires pleading "either that (a) the municipality had notice of a pattern of similar violations, or (b) the constitutional violation was the highly predictable consequence of a particular failure to train." *Id*.

### 2. Plaintiff's Third Amended Complaint fails to satisfy *Monell*.

Plaintiff's scattershot Third Amended Complaint does not plead any policy or polices (other than as set forth below regarding head strikes), with sufficient specificity to state a § 1983 *Monell* claim. The Court has identified 2 paragraphs in which Plaintiff lists the customs, patterns, and practices of Harris County that allegedly led to his injuries. In paragraph 38, Plaintiff alleges Harris County is liable for its practices of:

> condoning and encouraging excessive uses of force; encouraging violence between detainees; abiding violence generally, including

jailer-on-detainee violence; and inadequate provision of care, including failing to account for detainees' protective designations, delaying or refusing to break up fights, as well as failing to speedily provide emergency medical care.

ECF 68 ¶ 38.  In paragraph 604, Plaintiff alleges that Harris County is liable for its practices of:

> (i) guards assaulting inmates; (ii) failing to investigate excessive force; (iii) failing to discipline excessive force; (iv) failing to train and supervise officers in the use of force; (v) failing to have adequate staff; (vi) failing to adequately fund the jail; (vii) failing to keep the inmate population at a level appropriate for inmate safety; (viii) failing to provide body and dash cameras to lawyers to decrease the number of inmates in the jail [sic]; and (ix) failing to perform IAD investigations if criminal charges are pending against an inmate.

ECF 68 ¶604.  These allegations of an "official policy" are conclusory and generalized.  *See Vouchides v. Houston Cmty. Coll. Sys.*, No. CIV.A. H-10-2559, 2011 WL 4592057, at *12 (S.D. Tex. Sept. 30, 2011) (holding that conclusory allegations of the existence of an unwritten policy, practice, or custom are insufficient at the motion to dismiss stage).  This case involving an intentional assault by jail guards has nothing to do with violence between detainees, violence by inmates towards guards, the failure to investigate or discipline guards for violence, delay or denial of medical care, the protective designation of detainees, overcrowding, or underfunding.  While the Third Amended Complaint, like the Complaints before it, identifies a litany of other incidents occurring at the Harris County Jail and alleges that a generalized culture of violence exists there, the vast

majority of incidents described in the Third Amended Complaint lack similarity to the incident in this case. The Court has identified only 8 incidents of guard-on-inmate violence in Plaintiff's 615-paragraph Third Amended Complaint. *See* ECF 68 ¶¶ 15, 148, 384, 422, 443, 468, 562, 572. These incidents occurred between 2015 and 2023 and only one resembles this case—a February 2022 incident in which a guard was charged with the murder of an inmate after a vicious assault. *Id.* ¶ 15. The Third Amended Complaint alleges a generalized culture of violence and does not satisfy the requirements in the Fifth Circuit for alleging an official policy. *See Peterson*, 588 F.3d at 851 (affirming dismissal where plaintiffs alleged numerous incidents but "failed to provide context that would show a pattern of establishing a municipal policy").

Plaintiff's allegations in the Third Amended Complaint regarding Defendant's failures to train and supervise (other than as set forth below regarding head strikes) are conclusory and boilerplate. The Third Amended Complaint alleges multiple times, without factual support, that a lack of unspecified training led to Plaintiff's injuries. See, e.g., ¶¶ 38-52 (regarding handling detainee violence), ¶ 97 (regarding incidents of all types of violence); ¶ 183 (regarding suicide prevention); ¶ 209 (alleging that Gonzalez has continued the same training policies despite violence). In other words, none of the allegations support an assertion that what happened to Plaintiff was "the highly predictable consequence of a *particular* failure to train."

*Armstrong*, 60 F.4th at 277 (emphasis added). "Failure to train cannot be alleged by the simple assertion that the occurrence of the incident proves the need for additional or different training," which is all that Plaintiff has asserted here. *Oliveria v. City of Jersey Vill.*, No. 4:21-CV-03564, 2023 WL 7222124, at *4 (S.D. Tex. Nov. 2, 2023) (quoting *Garcia v. Harris Cnty.*, No. CV H-22-198, 2022 WL 2230469, at *2 (S.D. Tex. June 2, 2022), *report and recommendation adopted*, No. CV H-22-198, 2022 WL 2222972 (S.D. Tex. June 21, 2022)). Not only is there a dearth of facts demonstrating that Plaintiff's laundry list of alleged failures constitutes an official policy, the Third Amended Petition alleges no facts demonstrating that Harris County's failure to train and supervise guards on topics such as de-escalation and providing medical care caused the alleged violation of Plaintiff's Fourteenth Amendment rights.

*Wagner v. Harris Cty.*, Civil Action No. 4:23-cv-02886, 2024 WL 2836332 (S.D. Tex. 2024) does not control the outcome of this case. In 2023, a group of plaintiffs, consisting of individuals who suffered injuries while pre-trial detainees at the Harris County jail and representatives of deceased detainees, sued Harris County under 42 U.S.C. § 1983 for unconstitutional conditions of confinement and failure to train or supervise. *Wagner*, 2024 WL 2836332, *1. The incidents each plaintiff experienced at the jail varied widely, as did the claims they brought. *See id.* at *1-6 (describing incidents). The *Wagner* court recognized that when determining whether

15

plaintiffs have plead a policy based on other incidents courts "look at the incidents in context." *Id.* at 10 (citation omitted). Nonetheless, the court concluded all plaintiffs met their burden to plead the existence of polices or customs under *Monell*, including a policy of "permitting officers at the Jail to use excessive force against detainees," by pleading the following:

> (1) descriptions of the 27 incidents at issue in this suit, which bear varying degrees of similarity to each other; (2) details of 36 prior incidents at the Jail involving detainees who are not parties to the present action; (3) a 2009 DOJ report detailing deficiencies at the Jail; (4) 13 TCJS reports noting the Jail's non-compliance with minimum jail standards; (5) statements from Sheriff Gonzales[7] and prior Jail employees about the systemic issues in the Jail; and (6) statistics to show the prevalence of violence at the Jail.

*Id.* at 10-11.

*Wagner* differs from this case in several ways. First, because *Wagner* involved numerous plaintiffs, the Court did not focus on whether a specific policy was the driving force behind any particular plaintiff's injuries, whereas the primary focus of the Motion now before the Court is whether a specific policy was the driving force behind Plaintiff's injuries. Perhaps more importantly, *Wagner* was a "conditions of confinement" case. A conditions of confinement case attacks general conditions, practices, rules, or restrictions of pretrial confinement. *Id.* at *7. An episodic acts case involves a particular act by one or more officials, where the "actor usually is

---

[7] These appear to be the statements made by *candidate* Gonzalez in the October 2016 debate, not statements made by Sheriff Gonzalez after he assumed office.

interposed between the detainee and the municipality." *Id.* The most significant difference between the two types of cases is that a plaintiff in a conditions of confinement case need not plead that the rule or policy being challenged was the result of deliberate indifference. *Id.* Having ruled that the *Wagner* plaintiffs had alleged misconduct under a conditions of confinement theory, the court noted that it performed a *Monell* analysis only because both parties argued under the *Monell* framework. *Id.* at 9, n.3. Here, Plaintiff has never pleaded nor argued that this single plaintiff case involving his assault is a "conditions of confinement" case; all briefing in this case has proceeded on the theory that this is an "episodic acts or omissions" case that necessarily requires a *Monell* analysis. *See, e.g.,* ECF 69 at 7 (stating "Plaintiff seeks to hold Harris County liable under *Monell*.").

Moreover, as is clear from the Court's opinion in *Wagner*, the determination of whether pleadings meet the requirements of *Monell* is case specific. As noted at the outset of this Memorandum Opinion, the Third Amended Complaint must stand or fall on its own merit under applicable Fifth Circuit precedent. Except as to the use of head strikes, Plaintiff's pleading does not provide context to show that the other incidents cited as support of a widespread practice are sufficiently similar to the case at hand to establish an official policy. *See Babino v. Harris Cnty*., No. CV H-24-1870, 2024 WL 4340041, at *4 (S.D. Tex. Sept. 27, 2024) (recognizing that plaintiff's allegations, including the 2009 DOJ Report relied upon in *Wagner*, could

meet a *Monell* burden in some cases, but was not sufficient to save plaintiff's claim because he "alleged no similar incidences of detainee-on-detainee violence between the closing of the DOJ investigation in 20[09] and the occurrence of the attack on him in May 2022," citing *Inaimi v. Harris Cnty., Texas*, 2022 WL 901556 (S.D. Tex. Mar. 25, 2022)).

In sum, Plaintiffs' Third Amended Complaint fails to allege plausibly (other than as set forth below regarding head strikes), that an official policy of Harris County was the driving force behind the violation of Plaintiff's Fourteenth Amendment rights.

> **D.    Plaintiff's Third Amended Complaint states a § 1983 claim against Harris County for violation of his Fourteenth Amendment rights due to its policy regarding the use of head strikes on inmates, or the lack thereof.**

The Fourteenth Amendment provides a constitutional basis for an excessive force claim by a pretrial detainee.  *See Hare v. City of Corinth, Miss*., 74 F.3d 633, 639 (5th Cir. 1996) (holding that the constitutional rights of a pretrial detainee "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment").  As set forth above, Plaintiff's Third Amended Complaint must satisfy the requirements of *Monell* to survive Defendant's pending Motion to Dismiss.

The most significant difference between Plaintiff's prior pleadings and the Third Amended Complaint is the addition of allegations that Harris County

maintained a widespread pattern and practice of guards using "head strikes" on inmates as a form of control or discipline.  *See* ECF 68 at 30-37.  Plaintiff alleges:

> Closed-fist strikes to an inmate's head are a particularly dangerous use of force that commonly occurs within the Harris County Jail.  It can be considered a near-deadly use of force due to the types of traumatic injuries it may cause, such as the severe brain injuries caused by the strikes to Plaintiff's head . . . Head strike can and have also resulted in death.

ECF 68 ¶31.  Plaintiff alleges that despite knowledge of this danger at the time of his assault, Harris County did not have any policy establishing limits or providing guidance for the use of head strikes on inmates, nor did it provide any training programs addressing the use of head strikes.  *Id.* ¶¶ 32, 35.  The Supreme Court has recognized that "in limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  According to Plaintiff, the County's failure to impose policies or train guards led to a pattern of guards using head strikes against inmates in response to behaviors that did not require such force.  *Id*. ¶¶ 32-37.  The Fifth Circuit has held that "to succeed on a claim of failure to train or supervise under § 1983, the plaintiff usually must demonstrate 'a pattern of violations.'"  *Estate of Davis ex rel. McCully*, 406 F.3d at 382 (quoting Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (emphasis in original)).  Plaintiff alleges that there have been over 800 documented incidents of strikes to inmates' heads over the last 4 years, leading

to only 10 officers being disciplined, and some officers that were criminally indicted still not being internally disciplined.  ECF ¶ 32.  Plaintiff further alleges that after a news report brought the extent of the problem to public attention, Sheriff Gonzalez announced a new policy on January 8, 2025, implementing new training on the use of head strikes.  ECF ¶ 37.

The Court must accept as true for current purposes Plaintiff's allegations that: he was severely injured by unprovoked blows to his head by guards; there were over 800 head strikes on inmates over a four year period (which includes 2022, the year of his injury); Sheriff Gonzalez was aware of this pattern and did nothing to correct it; and Harris County at the time had no policy or training designed to address the potential harm to inmates from the excessive use of head strikes by guards.  Thus, Plaintiff's Third Amended Complaint satisfies *Monell* by pleading (1) a policy maker (Sheriff Gonzalez); (2) an official policy (lack of limits and training on the use of head strikes); and (3) that the official policy was the moving force behind the guards' use of excessive force and Plaintiff's injuries.  *See Piotrowski*, 237 F.3d at 578 (establishing the three elements of a *Monell* claim).

## IV.    Conclusion and Order

Solely as a matter of pleading at the Motion to Dismiss stage, the Court finds that Plaintiff's Third Amended Complaint satisfies Plaintiff's *Monell* pleading burden as to his claim for violation of his Fourteenth Amendment rights due to Harris

County's failure to have a policy or training designed to address the potential harm to inmates from the excessive use of head strikes.  Therefore, it is

ORDERED that Defendant's Motion to Dismiss (ECF 64) is GRANTED IN PART AND DENIED IN PART as set forth in this Memorandum and Order.   It is further

ORDERED that Plaintiff's claims other than his claim for violation of his Fourteenth Amendment rights due to Harris County's failure to have a policy or training designed to address the potential harm to inmates from the excessive use of head strikes are DISMISSED WITH PREJUDICE.

Signed on July 22, 2025, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge